ACCEPTED
01-15-00404-CV
FIRST COURT OF APPEALS
HOUSTON, TEXAS
7/21/2015 1:02:23 PM
CHRISTOPHER PRINE
CLERK

CASE NO. 01-15-00404-CV

_____

IN THE COURT OF APPEALS
FIRST DISTRICT OF TEXAS

FILED IN
1st COURT OF APPEALS
HOUSTON, TEXAS
7/21/2015 1:02:23 PM
CHRISTOPHER A. PRINE
Clerk

_____

MID PAC PORTFOLIO, LLC

Appellant

VS.

PAULA WELCH AND CLYDE ALAN ASHWORTH

Appellees

_____

On Appeal From the

405th Judicial District Court

Galveston County, Texas

_____

BRIEF OF APPELLANT

_____

Michael Burns
Attorney at Law
State Bar No. 03447980
P.O. Box 992
Allen, Texas 75013
Phone: (214) 354-1667
Attorney for Appellant

ORAL ARGUMENT IS NOT REQUESTED

i

## IDENTITY OF PARTIES AND COUNSEL

1. The Appellant/Plaintiff is:

   Mid Pac Portfolio LLC

2. The Appellant/Plaintiff Trial and Appellant Counsel is:

   Michael Burns
   Attorney at Law
   State Bar No. 03447980
   P.O. Box 992
   Allen, Texas 75013
   Email: burnslaw@outlook.com
   Phone: (214) 354-1667

3. The Appellee/Defendants are:

   Paula Welch and Clyde Alan Ashworth

4. The Appellee/Defendant Trial and Appellant Counsel is:

   Mark W. Stevens
   P.O. Box 8118
   Galveston, Texas 77553
   Email: markwandstev@sbcglobal.net
   Phone: (409) 765-6306
   Fax:    (409) 765-6469

# TABLE OF CONTENTS

IDENTITY OF PARTIES AND COUNSEL ........................................................ ii

TABLE OF AUTHORITIES .......................................................................... iv

STATEMENT OF THE CASE.........................................................................1

ORAL ARGUMENT…………………………………………………….…4

ISSUES PRESENTED…………………………………………………….…4

STATEMENT OF FACTS ...............................................................................5

SUMMARY OF ARGUMENT……………………………………………….7

ARGUMENT ..................................................................................................9

CONCLUSION AND PRAYER……………………………………………24

CERTIFICATE OF SERVICE .....................................................................25

CERTIFICATE OF COMPLIANCE.............................................................25

APPENDIX ..................................................................................................26

# TABLE OF AUTHORITIES

**Cases**

*Baughn v. Capps*, 2010 Tex. App. LEXIS 1580 (Tex. App. Waco 2010) .............10

*Brown v. Brown,* 145 S.W.3d 745 (Tex.App. – Dallas 2004). ...............................17

*Expro Americas, LLC v. Sanguine Gas Exploration, LLC*, 351 S.W.3d 915 (Tex. App.—Houston [14th ist.] 2011,pet.denied). ......................................................5

*FM Props. Operating Co. v. City of Austin*, 22 S.W.3d 868 (Tex. 2000). ................4

*Harbor Ventures, Inc. v. Dalton*, 2012 Tex. App. LEXIS 4009, (Tex. App. Austin 2012). .........................................................................................................................19

*Mem'l Park Med. Ctr., Inc. v. River Bend Dev. Group, L.P.*, 264 S.W.3d 810 (Tex. App. Eastland 2008) ......................................................................................................10

*Pierce v. Gillespie*, 761 S.W.2d 390 (Tex. App. Corpus Christi 1988) .................10

*Rhodes v. Cahill*, 802 S.W.2d 643 (Tex. 1990) .........................................................9

*Sarandos v. Blanton*, 25 S.W.3d 811 (Tex. App.--Waco 2000, pet. denied) ...........9

*Schoellkopf Co. v. Starr,* 88 S.W.2d 564 (Tex. Civ. App.- Galveston 1935), *aff'd,* 113 S.W.2d 1227 (Tex. 1938) ....................................................................................10

*Session v. Woods*, 206 S.W.3d 772 (Tex. App.—Texarkana 2006, pet. denied). .....8

*Thomas v. Rhodes,* 701 S.W.2 d 943, (Tex. App- Fort Worth, 1986). ....................10

*Thompson v. Curtis*, 127 S.W.3d 446, 450 (Tex.App.-Dallas 2004, no pet.) ........14

*Watson v. Tipton*, 274 S.W.3d 791 (Tex. App. Fort Worth 2008). ..........................7

*Wells v. Johnson* (Tex. App.-Amarillo, 2014) .........................................................8

**Statutes**

Tex. Civ. Prac & Rem. Code § 16.004(a)(1) ..................................................... 8, 12

Tex. Civ. Prac & Rem. Code § 16.025 .....................................................................10

Tex. Civ. Prac. & Rem. Code § 16.021 (3) ................................................................9

Tex. Civ. Prac. & Rem. Code § 16.021 (4) ................................................................9

Tex. Civ. Prac. & Rem. Code § 16.025(a) (2) .........................................................10

Tex. Civ. Prac. & Rem. Code § 37.009 .............................................................. 19,20

**Rules**

Tex. R. Civ. P. 735 ...................................................................................................14

Tex. R. Civ. P. 736 ...................................................................................................14

## STATEMENT OF THE CASE

This case involves a dispute over the ownership of a piece of property located in Santa Fe, Texas. The Plaintiff in this case is Mid Pac Portfolio, LLC (Mid Pac). The Defendants, who are the appellees in this appeal, are Paula Welch and Clyde Ashworth (Welch and Ashworth).

The Court will probably notice in reviewing the pleadings in the Clerk's Record that some of the pleadings contain different fonts. The font for Mid Pac's original pleadings in the trial court were in 12 inch Times New Roman. Some of Mid Pac's pleadings in the Clerk's Record are in a font that is different from the original pleadings which must have occurred when the Clerk's Record was prepared by the Galveston District Court clerk for this appeal.

Mid Pac filed this suit as a Declaratory Judgment action under Tex. Civil Practice and Remedies Code Sec. 37.001, et. seq. The initial Defendants were Ms. Welch, Mr. Ashworth and Wells Fargo Bank, Minnesota NA, formerly known as Norwest Bank, Minnesota, NA as Trustee for Salomon Brothers Mortgage Securities VII, Inc. Floating Rate Mortgage Pass Through Certificates, series 1999 –LB1 (Wells Fargo) (CR 6).

The general factual allegations in the original Petition were that Mid Pac had acquired a Deed in Lieu of Foreclosure executed by Welch and Ashworth in 2003 as part of a settlement of a law suit that Welch and Ashworth had initiated over a Texas Home

1

Equity loan they had on their property in Santa Fe, Texas and that Mid Pac was now the true and record owner of the property. The legal theories Mid Pac alleged in the original Petition were a Declaratory Judgment to quiet title to the property in Mid Pac and Trespass to Try Title. (CR 6- 51). Welch and Ashworth filed a General Denial Answer to the Original Petition and raised several affirmative defenses which included various statutes of limitation. (CR 52- 56). Wells Fargo was served with the original Petition on March 20, 2013. (CR 57-59).

On July 9, 2013, Mid Pac filed an Amended Petition which added Citigroup Global Markets Realty Corp. (Citigroup) as a Defendant. The basic factual allegations and legal theories as to the ownership dispute between Mid Pac and Welch and Ashworth remained the same in the Amended Petition as in the Original Petition. (CR 60- 106). Citigroup was added as Defendant because Mid Pac had acquired the Deed in Lieu that is the central issue of the case from Citigroup. (CR 63-64). Citigroup was served with the Amended Petition by certified mail from the Court Clerk. (CR 107- 108). Ashworth and Welch responded to the Amended Petition by filing a Supplemental Answer raising several affirmative defenses and a Counterclaim for a Declaratory Judgment. (CR 109- 115).

On January 2, 2014, counsel for Mid Pac filed a Stipulation and Disclaimer executed by Citigroup and Mid Pac in which Citigroup disclaimed any interest in the property at issue and admitted that it had sold whatever interest it had in the Deed in Lieu

2

at issue to Mid Pac. (CR 115-116). Wells Fargo failed to file an appearance in the suit. On January 15, 2014, Mid Pac filed a Motion for a Default Judgment against Wells Fargo and submitted a proposed Interlocutory Default Judgment against Wells Fargo to the trial court. (CR 117- 129).

From January 15, 2014 to April 15, 2015, Mid Pac and Welch and Ashworth filed cross Motions for Summary Judgment, responses and replies to the motions along with objections to each other's summary judgment evidence and various other motions related to the cross Motions for Summary judgment. (CR 129 – 757). On August 15, 2015, the trial court entered an order granting Welch and Ashworth's Motion for Summary Judgment and denying the Mid Pac's Motion. (CR 758). The order entered by the court was based on the Welch and Ashworth's proposed order granting their Motion for Summary Judgment which was submitted to the trial court on January 15, 2014. (CR-553). On September 22, 2014, Mid Pac filed an Amended Motion for Default Judgment against Wells Fargo and Citigroup. (CR 759- 772). On February 11, 2015, the trial court entered an Order granting Mid Pac's Amended Motion for Default Judgment against both Wells Fargo and Citigroup on a limited basis. (CR 799).

On April 14, 2015, the trial court entered an Amended Final Judgment granting the Motion for Summary Judgment filed by Welch and Ashworth and overruling Mid Pac's Motion for Summary Judgment. The judgment also reflected that Mid Pac's Amended Motion for Default Judgment against Wells Fargo and Citigroup was granted to only to

3

the extent that Citigroup did not have any right, title or interest in the Deed in Lieu or the property at issue and that the judgment did not rule that Mid Pac had acquired the Deed in Lieu from Citigroup or Wells Fargo. The final Judgment also awarded Welch and Ashworth attorney fees in the amount of $5,208. (CR 842- 844). Mid Pac filed its Notice of Appeal on April 29, 2015. (CR 845)

## ORAL ARGUMENT

Mid Pac Portfolio does not request oral argument because the facts, issues on appeal and applicable law are of a nature that can be sufficiently presented to the Court in the briefs of the parties.

## ISSUES PRESENTED

1.      Whether the trial court erred in granting Ashworth and Welch's Motion for Summary Judgment while denying Mid Pac's Motion for Summary Judgment.

2.      Whether statements made by Paula Welch in her affidavits supporting Welch and Ashworth's Motion for Summary Judgment that funds used to pay taxes on the property at issue were from a suspense account held by a loan servicer for her Texas Home Equity loan, and that these funds belonged to her, were proper summary judgment evidence.

4

3.      Whether statements by Paula Welch in her affidavits supporting Welch and Ashworth's Motion for Summary Judgment relating to the history of her Texas Home Equity loan were proper summary judgment evidence.

4.      Whether the trial court erred in the Amended Final Judgment by ruling that the Amended Motion for a Default Judgment filed by Mid Pac against both Wells Fargo and Citigroup was granted against only Citigroup instead of both Citigroup and Wells Fargo.

5.   Whether the trial court erred in awarding Welch and Ashworth attorney fees and costs in its Amended Final Judgment.


## STATEMENT OF FACTS

As noted in the Statement of the Case, this case involves a title dispute between Mid Pac and Welch and Ashworth over the property located in Santa Fe, Texas. Welch and Ashworth executed a Texas Home Equity Note dated March 26, 1999 in the amount of $270,000 payable to Long Beach Mortgage Company which was secured by 1625 Avenue L, Santa Fe, Texas (the property). (CR 163-186, 223- 235).

In 2000, Welch and Ashworth filed suit against Long Beach Mortgage over the home equity loan which led to a settlement between Welch and Ashworth and Long Beach Mortgage on March 14, 2003. (CR 164, 166-184, 213, 236-252). The settlement agreement provided that Welch and Ashworth had 90 calendar days from March 21, 2003

5

to pay off the Texas Home Equity loan and that the 90 day period ended on June 19, 2003. (CR 167, 237). The settlement agreement also provided that Welch and Ashworth would execute a Deed in Lieu of Foreclosure to secure the requirement that they pay off the loan within the 90 day period. (CR 168, 238, RR Vol 1 of 1 page 22). Welch and Ashworth executed the Deed in Lieu on March 21, 2003. (CR 182-186, 253-257, RR Vol 1 of 1 page 22). The grantee on the Deed in Lieu was Wells Fargo. (CR 182, 253).

The settlement agreement provided that the Deed in Lieu would be held in escrow until the end of the 90 day period and that if Welch and Ashworth had not paid off the home equity loan, the Deed in Lieu would be released from escrow. (CR 169, 240, RR Vol 1 of 1 page 22).Welch and Ashworth failed to pay off the balance of the loan in accordance with the settlement agreement. (CR 165, 211-215, RR Vol 1 of 1 page 23).

On June 1, 2012, Mid Pac acquired the original Deed in Lieu from Citigroup as part of asset purchase of loans and properties classified as foreclosed properties.  (CR 165, 141, 508-548, RR Vol 1 of 1 page 9, 20, 26). Mid Pac recorded the Deed in Lieu in the Galveston County real estate records on March 14, 2013.  (CR 165, 182-185, RR Vol 1 of 1 page 20).

Welch and Ashworth have lived in the property since February of 1995. (CR 211). Paula Welch paid the real estate taxes on the property for the years of 2002 to 2004 on July 27, 2005. The taxes for 2006 and 2007 were paid by Dovenmuehle Mortgage, Inc. The taxes for 2008 were paid by QBE First. American Home Mortgage Servicing paid

6

the 2009 taxes. SN Servicing Corporation paid the 2010 taxes. Paula Welch paid the 2011 taxes on March 27, 2012. (CR 667-677). Paula Welch first became aware a competing claim to ownership of the property by Wells Fargo in 2013. (CR 668).

## SUMMARY OF ARGUMENT

This case is based on the Deed in Lieu that Welch and Ashworth executed as part of the 2003 settlement agreement with Long Beach Mortgage to resolve the lawsuit they initiated against Long Beach over their Texas Home Equity loan. Mid Pac acquired the Deed in Lieu in June of 2012 from Citigroup as part of an asset purchase and recorded it in 2013. Mid Pac filed this suit as a Declaratory Judgment action against Welch and Ashworth, Wells Fargo and Citigroup to clear the title to the property in its name. Mid Pac initially included a Trespass to Title claim in its suit but abandoned it so it was not at issue in the trial court.

Both Mid Pac and Welch and Ashworth filed cross motions for summary judgment. The trial court granted Welch and Ashworth's Motion and denied Mid Pac's. Mid Pac contends that the trial should have granted its Motion for Summary Judgment and denied Welch and Ashworth's.

Mid Pac's position on the merits of the case is not complicated. It contends that Welch and Ashworth transferred their title to the property when they executed the Deed in Lieu and failed to comply with the 2003 settlement agreement by paying off their

7

home equity loan. The undisputed summary judgment evidence, including the stipulation and disclaimer by Citigroup, conclusively proves that Mid Pac acquired the Deed in Lieu from Citigroup.

Mid Pac named Wells Fargo as a Defendant so that Wells Fargo could assert any claims it may have had to the Deed in Lieu or the property. Since Wells Fargo defaulted, any claims it had have been disposed of. Consequently, Mid Pac, as the holder of the Deed in Lieu, it is the sole owner of the property.

Mid Pac also objects to certain statements Ms. Welch made in her affidavits in support of her Motion for Summary Judgment relating to her payment of the taxes on the property and the history of her dispute on the home equity loan. These statements are either conclusory or irrelevant and are not proper summary judgment proof to support the trial court's judgment.

In addition, Mid Pac contends that the trial court's Amended Final Judgment is incorrect because it is inconsistent with the Order the trial court entered granting Mid Pac's Motion for Default against Citigroup and Wells Fargo. The Order granting the Motion for Default stated that *neither Citigroup nor Wells Fargo* had any interest in the property while the Amended Final Judgment stated that *only Citigroup* did not have any interest in the property. The Final Judgment should have been consistent with the trial court's default order in that it should have stated that neither Citigroup nor Wells Fargo had any interest in the property.

8

Finally, Mid Pac contends that the trial incorrectly awarded attorney fees and costs to Welch and Ashworth. Mid Pac is requesting that this Court reverse the trial court's judgment and render judgment in its favor and remand the issue of attorney fees back to the trial court for reconsideration.

## ARGUMENT

## SUMMARY JUDGMENT REVIEW

This case is before the Court upon cross motions for summary judgment. A summary judgment is reviewed de novo on appeal.  Tex. Civ. Prac. & Rem. Code § 37.009 In reviewing a trial court's ruling on cross-motions for summary judgment, an appellate court will consider all summary judgment evidence, determine all issues presented, and then render the judgment the trial court should have rendered. *FM Props. Operating Co. v. City of Austin*, 22 S.W.3d 868 (Tex. 2000).     This Court may consider evidence presented by both parties in determining whether to grant either motion. *Expro Americas, LLC v. Sanguine Gas Exploration, LLC*, 351 S.W.3d 915 (Tex. App.— Houston [14th Dist.] 2011, pet. denied).

## SUMMARY JUDGMENT EVIDENCE

The undisputed facts in this case are simple and straight forward.  It is undisputed that:

1. Paula Welch and Clyde Ashworth executed a Texas Home Equity Note in the

amount of $270,000.00 payable to Long Beach Mortgage Company which was secured by the property located at 1625 Avenue L, Santa Fe, Texas. (CR 163-182, 211, 210-234)

2.     Ms. Welch, Mr. Ashworth and Long Beach Mortgage Company executed the 2003 Settlement Agreement to settle a lawsuit between Ms. Welch, Mr. Ashworth and Long Beach Mortgage Company over the home equity loan. (CR 163-182, 213, 236-252)

3.     As part of the settlement agreement, Ms. Welch and Mr. Ashworth executed the Deed in Lieu to the property to Wells Fargo as the grantee.  (CR 164-165, 182-186, 253-257)

4.     The settlement agreement provided that Ms. Welch and Mr. Ashworth had until June 19, 2003, to pay off the home equity loan or vacate the property and, if they failed to do so, the Deed in Lieu would be released from escrow.  (CR 164, 169, 170, 213, 239,240)

5.   Paula Welch and Clyde Ashworth did not pay off the Note in accordance the 2003 Settlement Agreement. (CR 213)

6.   On June 1, 2012, Mid Pac acquired the Deed in Lieu from Citigroup as part of an asset purchase transaction.  (CR 115-116, 165).

7.     Mid Pac Portfolio recorded the Deed in Lieu on March 14, 2013 in the Galveston County Real Estate Records. (CR 165)

8.     Wells Fargo failed to file an appearance in the suit to contest the allegations

10

or assert a claim to the Deed in Lieu or the property itself. (CR 759, 799).

9.    Citigroup admitted through its stipulation that it transferred its interest in the Deed in Lieu to Mid Pac and disclaimed any interest in the Deed in Lieu or the property at issue. (CR 115).

10.   Ms.  Welch paid taxes on the property for the years of 2003 and 2004 on July 27, 2005. (CR 671, 704-707).

## MID PAC PORTFOLIO IS THE OWNER OF THE PROPERTY

Under Texas law, title to real property is vested in the grantee of a deed when the deed is executed by the grantor and delivered to the grantee.  An unrecorded deed is binding on the grantor in the deed and is effective to pass title to the grantee. When a deed is recorded, it creates a presumption, and establishes a prima facie case, of the delivery of the deed and the intent of a grantor to transfer title to a property. *Watson v. Tipton*, 274 S.W.3d 791 (Tex. App. Fort Worth 2008).

In the 2003 settlement agreement that Ms. Welch and Mr. Ashworth executed, Ms. Welch and Mr. Ashworth agreed to pay off their home equity loan by June 19, 2003. They also executed the Deed in Lieu at issue in this case in accordance with the 2003 settlement agreement.  (CR 163, 194, 213, 236, 253). The 2003 agreement provided that the Deed in Lieu would be held in escrow until the loan was paid off.   If Ms. Welch and Mr. Ashworth failed to pay off the loan by the deadline in the settlement agreement, the

11

Deed in Lieu would be released from the escrow. (CR 237- 240).

Ms. Welch and Mr. Ashworth no longer have title to the property because they transferred the property out of their names with the Deed in Lieu in 2003. There is no factual dispute that Mid Pac acquired the Deed in Lieu from Citigroup on June 1, 2012 and that Mid Pac recorded it on March 14, 2013. Likewise, it is undisputed that Mid Pac acquired any interest that Citigroup and Wells Fargo may have had in the property by virtue Mid Pac's purchase of the Deed in Lieu from Citigroup and Wells Fargo's default in the suit. Consequently, Mid Pac is the owner of the property. The trial court was incorrect in denying Mid Pac's Motion for Summary Judgment and granting Welch and Ashworth's.

## WELCH AND ASHWORTH'S CLAIMS AND DEFENSES

Although Welch and Ashworth raised several legal theories in their pleadings, it appeared in the trial court that they primarily based their counter claim and affirmative defenses on the three year adverse possession statute in Tex. Civ. Prac. & Rem. Code § 16.024, the five year adverse possession statute in Tex. Civ. Prac. & Rem. Code § 16.025 and the four year statute of limitation in Tex. Civ. Prac. & Rem. Code § 16.004(a)(1). (CR 113,742, RR (Vol 1 of 1 pages 26-27).

## ADVERSE POSSESSION CLAIMS

Ms. Welch and Mr. Ashworth contend that they acquired ownership of the property through adverse possession. The nature of adverse possession is that a person

takes possession of property adversely to another party's ownership rights and is eventually allowed to acquire title because of continuous adverse use over time without the possession being broken by the true owner. *Session v. Woods*, 206 S.W.3d 772 (Tex. App.—Texarkana 2006, pet. denied). *Wells v. Johnson* (Tex. App.-Amarillo, 2014). Because establishing title by adverse possession has the effect depriving a party of lawful title to property, adverse possession is not well regarded in the law so the statutory prerequisites must be strictly complied with. *Thomas v. Southwestern Settlement & Development Co.,* 131 S.W.2d 31 (Tex. Civ. App.—Beaumont 1939) *Wells v. Johnson* (Tex. App.- Amarillo 2014)

To establish title by adverse possession, a party must prove:

(1)     a visible appropriation and possession of land, sufficient to give notice to the title holder;

(2)     that is peaceable,

(3)      under claim of right hostile to the title holder's claim, and

(4)      that continues for the duration specified in the applicable three, five, ten or twenty-five year limitation statute. See *Rhodes v. Cahill*, 802 S.W.2d 643 (Tex. 1990), *Sarandos v. Blanton*, 25 S.W.3d 811 (Tex. App.--Waco 2000, pet. denied).

The summary judgment evidence that was before the trial court in this case was not sufficient to prove that Ms. Welch and Mr. Ashworth occupied the property for the amount of time required by each adverse possession statute. Ms. Welch states in her Supplemental Affidavit in support of her Motion for Summary Judgment that she and Mr. Ashworth have "lived continuously and openly in the property" but does not state how *long they have occupied it.* (CR 670).

Likewise, both the three and five year statutes require that Welch and Ashworth have some form of *record* title to support their adverse possession claim. The three year statute requires "title or color of title". "Title" is defined as "a *regular chain of transfers* of real property from or under the sovereignty of the soil". Tex. Civ. Prac. & Rem. Code § 16.021 (4). "Color of title" is defined in Tex. Civ. Prac. & Rem. Code § 16.021 (3) as a "consecutive *chain of transfers to the person* in possession that:

(A) is not regular because of a muniment that is not properly recorded or is only in writing or because of a similar defect that does not want of intrinsic fairness or honesty; or

(B) is based on a certificate of headright, land warrant, or land scrip."

The five year statute requires that Welsh and Ashworth claim title to the property under a "duly registered deed". Tex. Civ. Prac & Rem. Code § 16.025 There is no summary judgment evidence in the trial court record of *any type of record title into*

14

*Welch and Ashworth* to satisfy the "title" or "color of title" requirement for the three year statute or a "duly registered deed" in their names for the five year statute.

Beside a "duly registered deed" into Welch and Ashworth, the five year statute also requires that they had paid the taxes on the property for five consecutive years. Tex. Civ. Prac. & Rem. Code § 16.025(a) (2), *Mem'l Park Med. Ctr., Inc. v. River Bend Dev. Group, L.P*., 264 S.W.3d 810 (Tex. App. Eastland 2008); *Baughn v. Capps*, 2010 Tex. App. LEXIS 1580 (Tex. App. Waco 2010); *Pierce v. Gillespie*, 761 S.W.2d 390 (Tex. App. Corpus Christi 1988); *Schoellkopf Co. v. Starr,* 88 S.W.2d 564 (Tex. Civ. App.-Galveston 1935), *aff'd,* 113 S.W.2d 1227 (Tex. 1938). In order to satisfy this requirement the *taxes must be paid before they become delinquent. Thomas v. Rhodes,* 701 S.W.2 d 943, (Tex. App- Fort Worth, 1986).

The summary judgment evidence relating to the payment of taxes is in the Supplemental Affidavit of Paula Welch (CR 667 -676). Welch and Ashworth also submitted certified records from the Galveston County Tax Assessor to substantiate the statements in her affidavit. (CR 703-719).

There was no undisputed summary judgment evidence in the trial court that Ms. Welch and Mr. Ashworth paid the taxes for five consecutive years before they became delinquent beginning from either March 23, 2003 (the Date of the Deed in Lieu) or June 23, 2003 (which was the date the Deed in Lieu could have been released from escrow

15

under the 2003 settlement agreement). (CR 665). Ms. Welch's affidavit shows the following tax payments from 2003 to 2012:

| Receipt Date | Amount | Tax Year | Description | Payer |
|---|---|---|---|---|
| 2012-03-27 | $5,152.99 | 2011 | Payment | WELCH PAULA A |
| 2011-.06-17 | ($95.12) | 2010 | Refunded | SN SERVICING CORPORATION |
| 2011-04-27 | $95.12 | 2010 | Transfer | SN SERVICING CORPORATION |
| 2011-04-27 | ($95.12) | 2010 | Transfer | SN SERVICING CORP. |
| 2011-04-27 | $5,373.61 | 2010 | Payment | SN SERVICING CORP. |
| 2009-12-31 | $2,820.81 | 2008 | | QBE FIRST |
| 2009-12-29 | $4,039.56 | 2009 | Payment | AMERICAN HOME MTG SERV |
| 2009-01-05 | ($2,820.81) | 2008 | Reversal | QBE FIRST |
| 2008-12-31 | $2,820.81 | 2008 | | QBE FIRST |
| 2007-12-19 | $2,827.94 | 2007 | Payment | DOVENMUEHLE MORTGAGE, |
| 2007-01-02 | $2,883.83 | 2006 | Payment | DOVENMUEHLE MORTGAGE |
| 2006-02-10 | $2,977.30 | 2005 | | MORTGAGE SERVICES |
| 2005-07-27 | ($0.02) | 2004 | | WELCH PAULA A |
| 2005-07-27 | $3,949.39 | 2004 | | WELCH PAULA A |
| 2005-07-27 | $101.84 | 2004 | | WELCH PAULA A |
| 2005-07-27 | $2,871.38 | 2003 | | WELCH PAULA A |
| 2005-07-27 | $1,210.12 | 2003 | | WELCH PAULA A |
| 2005-07-27 | $1,191.08 | 2002 | | WELCH PAULA A |
| 2005-07-27 | $2,730.10 | 2002 | | WELCH PAULA A |

Ms. Welch states in her affidavit that even though these records show that the taxes were paid by the lenders or servicing companies on the loan rather than herself, Ms. Welch still claims credit for the payments because she assumes the payments were made from a "suspense account" held by the loan servicers which were actually her funds. Whether Ms. Welch's "suspense account" statements are proper summary evidence is an

16

issue in this appeal. Regardless of how that issue will be resolved, the summary judgment evidence still does not prove that the taxes were paid before they became delinquent for any consecutive five year period *by anyone* even if Welch and Ashworth are given credit for all of the tax payments Ms. Welch claims to have made.

## FOUR YEAR STATUTE OF LIMITATION IN 16.004(a)(1)

Ashworth and Welch raised Tex. Civ. Prac. & Rem. Code § 16.004(a)(1) as an affirmative defense in the trial court. The statute provides that a suit for specific performance on a contract to convey property must be brought within four years. This statute is not applicable to this case. Mid Pac has not alleged that it was a party to a contract with Ms. Welch and Mr. Ashworth to convey the property and is not trying to enforce a contract to convey the property. Mid Pac is trying to clear title to the property in its name based on the Deed in Lieu.

## OTHER ISSUES RAISED BY WELCH AND ASHWORTH

Welch and Ashworth raised several other issues in their pleadings and Motion for Summary Judgment. Even though it is unclear from the trial court's judgment whether these issues had any bearing on the trial court's ruling on the cross Motions for Summary Judgment, Mid Pac would like to briefly address the following two issues and will address them more thoroughly if Welch and Ashworth develop them in their Response Brief in this appeal.

17

## MARY CARTER AGREEMENT

Welch and Ashworth questioned the asset purchase transaction between Mid Pac and Citigroup Global Markets Realty Corp as being a collusive "Mary Carter Agreement" scheme for Citigroup to enforce the Deed in Lieu instead of a legitimate business transaction through which Mid Pac acquired the Deed in Lieu. Ms. Welch and Mr. Ashworth produced absolutely no evidence, *let alone undisputed summary judgment evidence*, to support this accusation because there is none. The undisputed evidence is that Mid Pac acquired the Deed in Lieu from Citigroup in June of 2012 under an asset purchase transaction.

## RES JUDICATA AND ISSUE PRECLUSION

In their Amended Motion for Summary Judgment, Welch and Ashworth raised the issue of whether the ruling in Case No. 06CV0224, *Citigroup Global Realty Markets Corp. v. Paula Welch and Clyde Ashworth*, is a defense to the Mid Pac's Motion for Summary Judgment on the grounds of res judicata and issue prelusion. (CR 742- 744)

Although Ms. Welch and Mr. Ashworth did not produce copies of any pleadings or orders from Case No. 06CV0224 to substantiate their contention, they referenced the docket sheet for the case and, in particular, the ruling by the trial judge on March 28, 2008. This entry reads: "*APPL FOR FORECLOSURE IS DENIED /S/JE/DS*".

As it pertained to Citigroup , Case No. 06CV0224 was a proceeding under Tex. R.

Civ. P. 735 and Tex. R. Civ. P. 736 which apply to foreclosures of home equity loans. Tex.R.Civ. P. 736.9 states:

> "Effect of the Order. --An order is without prejudice and has no *res judicata, collateral estoppel, estoppel by judgment, or other effect in any other judicial proceeding*. After an order is obtained, a person may proceed with the foreclosure process under applicable law and the terms of the lien sought to be foreclosed."

Consequently, the ruling in Case No. 06CV0224 regarding Citigroup's attempt to foreclose Mr. Welch's and Ms. Ashworth's home equity loan did not have a preclusive effect on Mid Pac's cause of action in this case.

## OBJECTIONS TO SUMMARY JUDGMENT EVIDENCE

Mid Pac raised several objections to the affidavits that Paula Welch submitted in support of her Motion for Summary Judgment which the trial court failed to rule on. (CR 565, 677). To the extent that these objections were to the form of Ms. Welch's affidavits, Mid Pac concedes that these objections were waived. *Thompson v. Curtis*, 127 S.W.3d 446 (Tex.App.-Dallas 2004, no pet.). However, objections to defects in the substance of an affidavit may be may be raised for the first time on appeal. Lack of relevancy and conclusory statements are substantive defects which can be raised on appeal. *McMahan v. Greenwood*, 108 S.W.3d 467 (Tex.App.-Houston [14th Dist.] 2003, pet. denied).

## RELEVANCY

Ms. Welch filed two separate affidavits in support of her Motion for Summary Judgment (CR 211, 667). In her first affidavit (CR 211) she makes the following

19

statements:

"4. In approximately 1999, Clyde Ashworth and I applied for a home equity loan. In around March 26, 1999, we signed all closing documents. Under those closing documents we were supposed to get $28,045.06. See Exhibit 4, which is a true and correct copy of the closing statement which we signed, and as was later unilaterally modified by the lender. After we had signed the closing statement, and after the right rescission (3 days) had passed on March 29, 1999, we went to pick up the check on March 30, 1999. At that time, I noticed that the check was about $8,000 short of what we were supposed to get under the original form of Exhibit 4, as we had signed it. I asked the closing agent (Stewart Title) why the amount was short and was given no response except to contact the lender, Ameriquest. This meeting took place at Stewart (League City) at approximately 11:00 that day, March 30, 1999. That afternoon, I contacted Ameriquest by telephone, and they faxed me Exhibit 4 as it presently appears, with the handwritten entries as1presently shown on Exhibit 4, changing the settlement charges on line 103 from $15,839.13 to $11,803.13; changing the "Payoff ' on line 104 from $226,495.81 to $239,034.83; changing the Gross Amount due from Borrower on 4, we were supposed to get cash of $28,045.06, as indicated on Line 303 (Cash to Borrower). Instead, Exhibit 2 was changed to read on line 303 $19,562.04, a difference of approximately $8,483.02.

5. Neither I nor my husband Clyde Ashworth ever authorized or approved in advance the change in figures on Exhibit 4 as described above. As a result, the objective of the loan (Paying off business partners of my husband Clyde's) was prevented, and we had to borrow additional funds (about $5,000) from another bank.

5A. The previous lender, who was repaid with the proceeds of the loan now in dispute, was IMC Mortgage. In year 2000, IMC Mortgage advised that it had been overpaid and that the amount received was $148,000 in excess, so it refunded the $148,000 to the lender, i.e., Long Beach or its assigns. I have never gotten an account of where the $148,000 went other than documents filed in the 122d District Court showing the credit. These facts were related later to the various judges described below." (CR 211 -212).

The issue in this case is whether the Deed in Lieu that Welch and Ashworth

20

executed in connection with the 2003 settlement agreement is effective to pass title to the property at issue to Mid Pac. The litigation that led to the 2003 settlement agreement was initiated by Welch and Ashworth and was intended to resolve the dispute that they had over the loan.

All of the referenced excerpts from her affidavit relate to issues that Ms. Welch had with the loan prior to her lawsuit that resulted in the 2003 settlement agreement. The problems that Ms. Welch had with the loan prior to the 2003 settlement are not relevant to this law suit. Therefore, paragraphs 4, 5 and 5A of her affidavit that relate to the historical issues with the home equity loan are not proper summary judgment evidence and should not have be considered by the trial court in ruling on the Cross Motions for Summary Judgment.

## CONCLUSORY STATEMENTS

Ms. Welch also filed a Supplementary Affidavit to support her adverse possession claim in which she states that some of the funds that were used to pay the taxes on the property came from a suspense account. (CR 667). These excerpts are:

Paragraph 6: "I should further note that, looking at the third column (Tax Year), taxes were paid by me for the tax years of 1991 through 2005 (15 years) and for the tax years 1999 through 2005 (6 years). Furthermore, since 2003 (the year in which the so-called Deed in Lieu was executed) taxes have been continuously paid through 2011 directly by me or *with funds of mine taken from a suspense account,* for a period of approximately 8 years."

Paragraph 9: "Comparing Exhibit "C" to the list of ad valorem payments, Exhibit A, *it is apparent that ASC or subsequent Mortgage Companies used the suspense account (i.e., my money) to pay taxes on the home in question from February 10, 2006 through June 17,2011.*"

Paragraph 10: "The total amount of taxes *paid out of the suspense account* (i.e., *my money in the possession of a servicing agent*) are as follows:

21

| Date of Pmt | Amt. of Payment | TX year | Total |
|---|---|---|---|
| 2006-02-10 | $2,977.30 | 2005 | 2,977.30 |
| 2007-01-02 | $2,883.83 | 2006 | $5,861.13 |
| 2007-12-19 | $2,827.94 | 2007 | $8,689.07 |
| 2008- 12-31 | $2,820.81 | 2008 | $11,509.88 |
| 2009-01-05 | (2,820.81) (reversal) | 2008 | 8,689.07 |
| 2011-04-27 | $5,373.61 | 2010 (2009) | $14,062.68" |

Affidavit: 12: "Thus, *of the 26,089.57 held in suspense, $14,062.68 has been applied to taxes*. I have never received an accounting of the remaining monies, i.e.,

A statement is conclusory if it does not provide facts to support it. *Brown v. Brown,* 145 S.W.3d 745 (Tex.App. – Dallas 2004). All of these statements by Ms. Welch that any funds that were used to pay the taxes were paid from funds in a suspense account held by one of the servicers for the loan and that the suspense account *funds were hers* are conclusory. There are no facts in her affidavit explaining what a "suspense account" is, why it was created, where the funds came from that were supposedly in the suspense account or that funds used in the suspense account were used to pay the taxes. Ms. Welch *assumes* that because she received a letter dated 2004 from a loan servicer named ASC which referred to a suspense account, the funds in that account were used to pay the taxes. (CR 668). None Ms. Welch's above referenced conclusory statements relating to the suspense account funds being hers or that they were used to pay the taxes on the property should be considered competent summary judgment evidence.

22

## **DEFAULT JUDGMENT AGAINST WELLS FARGO**

Mid Pac filed an Amended Motion for a Default judgment against Wells Fargo on the grounds that Wells Fargo had not appeared or filed an answer in the suit and against Citigroup by virtue of the disclaimer it filed. (CR 759) The trial court granted the motion and entered an order stating that neither Wells Fargo nor Citigroup had any interest in the property at issue.  (CR 799).

However, in the Amended Final Judgment, the trial court stated that Mid Pac's Amended Motion for Default was granted only against Citigroup and that only *Citigroup* (instead of both Citigroup and Wells Fargo) had "no right, title or interest" in the property or Deed in Lieu at issue in the suit. There is no explanation or reason in the trial court record why the trial court's Final Amended Judgment should not have been consistent with its Order Granting Mid Pac's Amended Motion for Default in cutting off Wells Fargo's rights in the property and Deed in Lieu just as Citigroup's were.  Mid Pac requests that the case be remanded to the trial court enter a final judgment that is consistent with its Order granting Mid Pac's Motion for Default against Wells Fargo and Citigroup.

## **ATTORNEY FEES AND COSTS**

The trial court awarded the Welch and Ashworth $5,208 in legal fees and court costs under Tex. Civ. Prac. & Rem. Code § 37.009 in the Amended Final Judgment. When a declaratory judgment is reversed on appeal, the award of attorneys' fees may no

23

longer be "equitable and just" as required is under §37.009 and the issue of whether to award attorneys' fees and costs, and to whom, can be remanded to the trial court for further proceedings. *Harbor Ventures, Inc. v. Dalton*, 2012 Tex. App. LEXIS 4009, (Tex. App. Austin 2012). Since Mid Pac contends that the trial court erred in granting Welch and Ashworth's Motion for Summary Judgment and denying its Motion for Summary Judgment, if this Court reverses the trial court's judgment, the trial court should be directed to reconsider the portion of its judgment awarding attorney fees and costs to Welch and Ashworth.

## CONCLUSION AND PRAYER

Appellant Mid Pac Portfolio requests that the Court reverse the trial court's judgment and render judgment for Mid Pac by denying the Appellee Welch and Ashworth's Motion for Summary Judgment and granting Mid Pac's Motion for Summary Judgement, award the costs of this appeal to Mid Pac and remand the case to the trial court to determine whether any of the parties should be awarded reasonable attorney fees and court costs at the trial court level pursuant to Tex. Civ. Prac. & Rem. Code § 37.009.

Respectfully submitted,

/s/ Michael Burns
State Bar No. 03447980
P.O. Box 992
Allen, Texas 75013
Phone: (214) 354-1667
ATTORNEY FOR APPELLANT

24

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the above and foregoing pleading was accomplished on the July 21, 2015 by the method and to the following as indicated:

Mark W. Stevens
P.O. Box 8118
Galveston, Texas 77553
E-mail: markwandstev@sbcglobal.net


/s/ Michael Burns




## CERTIFICATE OF COMPLIANCE

I hereby certify that this document was produced on a computer using Microsoft Word 2013 and contains 6628 words, as determined by the computer software's word-count function excluding the sections of the document listed in Texas Rule of Appellate Procedure 9.4(i)(1).


/s/ Michael Burns

# **APPENDIX**

|  | Record | Pages |
|---|---|---|
| Amended Final Judgment in Case No. 13-CV-0422……………………………………………………… | CR | 356-358 |
| 2003 Settlement Agreement ……………………………………. | CR | 236- 251 |
| Deed in Lieu of Foreclosure …………………………………. | CR | 182-186 |
| Citigroup Stipulation……………………………………………. | CR | 115-116 |

13-CV-0422
DCAMFJ
Amended Final Judgment
1022767

No. 13CV0422

15 APR 14 PM 3: 16

MID PAC PORTFOLIO LLC

VS.

PAULA WELCH,
CLYDE ASHWORHT and
WELLS FARGO BANK, NA
AS TRUSTEE FOR SALOMON
BROTHERS MORTGAGE
SECURITIES VII, INC. FLOATING
RATE MORTGAGE PASS
THROUGH CERTIFICATES
SERIES 1999-LBI

IN THE 405TH DISTRICT

DISTRICT CLERK
GALVESTON COUNTY, TEXAS

COURT OF GALVESTON.

COUNTY, TEXAS

## Amended FINAL JUDGMENT

The Court, having considered the Motion for Summary Judgment of Plaintiff Mid Pac Portfolio LLC ("Mid Pac") and the Motion and Amended Motion for Summary Judgment of Defendants and Counter Plaintiffs Paula Welch and Clyde Ashworth (collectively, "Welch and Ashworth") and respective objections thereto, rules as follows:

The Motion for Summary Judgment of Mid Pac Portfolio LLC is hereby OVERRULED.

The Motion for Summary Judgment and Amended Motion for Summary Judgment of Welch and Ashworth is GRANTED.

The Motion of Mid Pac for a Default Judgment as against Citigroup Global Markets Realty Corp. is Granted to the extent only that Citigroup Global Markets Realty Corp. has at this time no right, title or interest in the Deed in Lieu of Foreclosure or the property described therein and further provided that the Court

1

does not thereby rule implicitly or otherwise that any effective conveyance by Citigroup Markets Realty Corp. or Wells Fargo NA of the Deed in Lieu or property described therein to Mid Pac Portfolio, LLC has taken place at any time.

It is therefore Ordered, Adjudged and Decreed that Mid Pac Portfolio LLP take nothing from Paula Welch and Clyde Ashworth.

It is further ordered, adjudged and decreed and declared that the "deed in lieu of foreclosure" which was filed of record on March 14, 2003 under Instrument Number 2013015526 in the deed records of the County Clerk of Galveston County, Texas and describing the property contested, the legal description of which is:

> Lot One Hundred (100) of THAMAN'S FIRST SUBDIVISION in the East ½ of the Mary Austin League, located in Galveston County, Texas according to the map or plat thereof recorded in Volume 231, Page 6, in the office of the County Clerk of Galveston County, Texas.

is unenforceable and barred from any further effort to enforce the same by any person, firm or entity purporting to have title to the subject property through such deed from any source, including but not limited to Mid Pac Portfolio LLC; Wells Fargo Bank N.A. as Trustee for Salamon Brothers Mortgage Securities VII, Inc., Floating Rate Mortgage Pass through Certificates Series 1999-LBI; or Citigroup Global Markets Realty Corp.

It is further Ordered, Adjudged and Decreed that Paula Welch and Clyde Ashworth shall have and recover of and from Mid Pac Portfolio LLC the following:

A. $ 5,206 ⁰⁰ for attorneys fees before the trial court and through and including the date of this Judgment;

2

843

B. $ _2,500.00_ In the event a notice of appeal is filed herein and Defendants Welch and Ashworth or either of them ultimately prevail on such appeal; and

C. $ _1500.00_ In the event that either party shall file a petition for review with the Supreme Court of Texas and such petition for review is granted and further in the event that Welch and Ashworth prevail in such proceeding.

D.   all taxable costs of court,

E.   Postjudment interest at the statutory rate of 5.0 percent per annum on attorneys fees state above from the date of entry herein;

FOR WHICH SUMS LET EXECUTION ISSUE.

Any relief not specifically granted herein is DENIED.

This judgment disposes of all issues and all parties and is a FINAL AND APPEALABLE JUDGMENT.

Signed: _April 14_ , 2015.

_____
Michelle Slaughter
District Judge

3

844

Case 03-46247 ument 20 Filed in TXSB on 03/22 4 Page 37 of 66



## COMPROMISE AND SETTLEMENT AGREEMENT AND RELEASE

This COMPROMISE AND SETTLEMENT AGREEMENT AND RELEASE (hereinafter referred to as the "Agreement") is made and entered into effective as of March 14, 2003, by and between Plaintiffs/Counter-Defendants Clyde Ashworth and Paula Welch (hereinafter referred to as "ASHWORTH AND WELCH") and Defendant/Counter-Plaintiff LONG BEACH MORTGAGE COMPANY, formerly d/b/a FINANCING USA (hereinafter referred to as "LONG BEACH").

WHEREAS, ASHWORTH AND WELCH brought suit against LONG BEACH, in the 56th Judicial District Court of Galveston County, Texas, bearing Cause No. 00-CV-0409 entitled *Clyde Ashworth and Paula Welch v. Long Beach Mortgage Company, d/b/a Financing USA* and whereas LONG BEACH brought counterclaims against ASHWORTH AND WELCH in said suit (hereinafter referred to as the "Lawsuit"), which claims and counterclaims arose out of the home equity loan, former loan no. 8125577, current loan no. 0041770264, that ASHWORTH AND WELCH obtained from LONG BEACH ("the Home Equity Loan") in the original principal amount of $270,400.00 and secured by the real property located at 1625 Avenue L, Santa Fe, Galveston County, Texas (the "Property"), the lack of ASHWORTH AND WELCH'S monthly payments for such Home Equity Loan, the filings of Applications for Expedited Foreclosure Proceedings, and ASHWORTH AND WELCH'S cashing of Farmers Insurance Exchange's check no. 3255000101, dated November 16, 2000, and made payable to Paula Welch, Clyde Ashworth, and Long Beach Mortgage in the amount of $10,936.63; and

WHEREAS, LONG BEACH denies that ASHWORTH AND WELCH have suffered any damages and further believes that ASHWORTH AND WELCH'S claims are wholly without merit or foundation; and

COMPROMISE AND SETTLEMENT AGREEMENT AND RELEASE – Page 1 **EXHIBIT "D"**

236



WHEREAS, disputes and controversies exist between ASHWORTH AND WELCH and LONG BEACH (ASHWORTH AND WELCH and LONG BEACH collectively are sometimes hereinafter referred to as the "Parties"), both as to liability and the amount of damages, if any, that are due because of the disputes between them; and

WHEREAS, the Parties wish to avoid the expense of litigation and have agreed to compromise and settle their disputes, claims, or causes of action between ASHWORTH AND WELCH and LONG BEACH, including all claims and causes of action of any kind that currently exist or that may exist in the future that relate in any way to the transactions, the occurrences, and the Home Equity Loan described in the Lawsuit (collectively, the "Transactions") on the terms of settlement, and as limited by those terms, as set forth in this Agreement, with the recognition that there may be claims that are unknown to the Parties at the time of execution of this Agreement or that may arise in the future, with full knowledge of the possibility of additional claims, and with the intent that this Agreement settles and finally disposes of all claims arising out of the Home Equity Loan, the Transactions, and the Lawsuit, whether known or unknown, on the terms of settlement, and as limited by those terms, as set forth in this Agreement.

NOW, THEREFORE, in consideration of the foregoing and the following mutual promises and agreements, and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Parties agree to settle as follows:

1.    LONG BEACH agrees to give ASHWORTH AND WELCH 90 calendar days from March 21, 2003, which 90 day period ends at 5:00 p.m. on Thursday, June 19, 2003, (hereinafter referred to as the "90-Day-Period") to either (a) obtain refinancing of the Home Equity Loan at issue in full from entities other than LONG BEACH or any entities that are affiliated with LONG BEACH and/or (b) pay off the Home Equity Loan at issue in full through their own resources. Counsel for ASHWORTH AND WELCH agree to provide by facsimile

COMPROMISE AND SETTLEMENT AGREEMENT AND RELEASE – Page 2

237



transmission, no later than twenty (20) business days prior to the close of any refinancing of the Home Equity Loan, the names of any and all entities from which ASHWORTH AND WELCH are seeking refinancing of the Home Equity Loan, as well as any information as to any correspondent lender that might be involved in any such refinancing, to counsel for LONG BEACH. Counsel for LONG BEACH will then notify counsel for ASHWORTH AND WELCH by facsimile transmission, no later than three (3) business days after receiving the facsimile transmission from ASHWORTH AND WELCH'S counsel, information as to whether any such entities are affiliated with LONG BEACH or involved in a correspondent lending relationship with LONG BEACH or its affiliates with respect to any such refinancing to LONG BEACH'S knowledge or information.

2.      ASHWORTH AND WELCH agree that contemporaneously upon their execution of this Agreement, they will execute and provide a Deed in Lieu of Foreclosure, in the form attached as Exhibit A hereto and incorporated herein by reference, to the holder of the Texas Home Equity Security Instrument (the "Deed of Trust") to be held in escrow by LONG BEACH. ASHWORTH AND WELCH agree that their counsel will send to LONG BEACH'S counsel via overnight delivery the originally signed Deed in Lieu of Foreclosure after execution of same by ASHWORTH AND WELCH, for delivery the first business day after execution of same.

3.      ASHWORTH AND WELCH and LONG BEACH understand and agree that the term "100% OF THE FULL AMOUNT OWED ON THE HOME EQUITY LOAN," which term will be set forth hereinafter throughout this Agreement, means 100% of the full amount owed on the Home Equity Loan, as shown on the last payoff statement issued by LONG BEACH or its affiliates as of the date payment is received by LONG BEACH, which includes the principal balance, accrued interest, late charges, recoverable balance, any escrow advances, payoff

COMPROMISE AND SETTLEMENT AGREEMENT AND RELEASE - Page 3

statement fee, and recording fee, plus accrued per diem interest through and including the date payment is received by LONG BEACH.

4. ASHWORTH AND WELCH agree to refinance by the end of the 90-Day-Period set forth in paragraph 1 above 100% OF THE FULL AMOUNT OWED ON THE HOME EQUITY LOAN. ASHWORTH AND WELCH acknowledge that they previously were provided with information as to what comprises each of the components of 100% OF THE FULL AMOUNT OWED ON THE HOME EQUITY LOAN: ASHWORTH AND WELCH understand and agree that there will be no compromises on the full amount due and owed on the Home Equity Loan as of the date payment is received by LONG BEACH.

5. In the event ASHWORTH AND WELCH obtain refinancing of less than 100% OF THE FULL AMOUNT OWED ON THE HOME EQUITY LOAN, ASHWORTH AND WELCH agree to pay in certified funds on the date of funding the refinancing of the Home Equity Loan the difference between 100% OF THE FULL AMOUNT OWED ON THE HOME EQUITY LOAN and the amount of the Home Equity Loan that ASHWORTH AND WELCH were able to refinance.

6. In the alternative, if ASHWORTH AND WELCH do not obtain refinancing of the Home Equity Loan, ASHWORTH AND WELCH agree to pay by the end of the 90-Day-Period in certified funds 100% OF THE FULL AMOUNT OWED ON THE HOME EQUITY LOAN. ASHWORTH AND WELCH understand and agree that there will be no compromises on the full amount due and owed on the Home Equity Loan as of the date payment is received by LONG BEACH.

7. If at the end of the 90-Day-Period LONG BEACH is not paid 100% OF THE FULL AMOUNT OWED ON THE HOME EQUITY LOAN through ASHWORTH AND WELCH'S full or partial refinancing of the Home Equity Loan and/or ASHWORTH AND

COMPROMISE AND SETTLEMENT AGREEMENT AND RELEASE - Page 4

WELCH have not paid 100% OF THE FULL AMOUNT OWED ON THE HOME EQUITY LOAN, ASHWORTH AND WELCH agree that the Deed in Lieu of Foreclosure will be released from escrow, and the holder of the Deed of Trust will take title to and possession of the Property without a judicial foreclosure proceeding, or, in the alternative and at its option, the holder of the Deed of Trust retains the right to judicially foreclose on the Property and pursuant to that right, can judicially foreclose on the Property. ASHWORTH AND WELCH agree to vacate the Property by the end of the 90-Day-Period, which is by 5:00 p.m. on Thursday, June 19, 2003, if 100% OF THE FULL AMOUNT OWED ON THE HOME EQUITY LOAN has not been paid in full by that date (either by a refinance and/or with ASHWORTH AND WELCH'S own resources). ASHWORTH AND WELCH further agree not to commit waste on the Property or engage in any acts that would impair title to the Property or the value of the Property.

8. LONG BEACH agrees to pay ASHWORTH AND WELCH the sum of TWENTY THOUSAND AND 00/100 DOLLARS ($20,000.00) ten (10) business days after the date ASHWORTH AND WELCH pay 100% OF THE FULL AMOUNT OWED ON THE HOME EQUITY LOAN. HOWEVER, if at the end of the 90-Day-Period 100% OF THE FULL AMOUNT OWED ON THE HOME EQUITY LOAN has not been paid in full to LONG BEACH, LONG BEACH will pay ASHWORTH AND WELCH the sum of FIFTEEN THOUSAND AND 00/100 DOLLARS ($15,000.00) ten (10) business days after the end of the 90-Day-Period, as long as ASHWORTH AND WELCH have vacated the Property, as ASHWORTH AND WELCH have agreed in paragraph 7 of this Agreement.

9. ASHWORTH AND WELCH agree that LONG BEACH'S counsel has provided ASHWORTH AND WELCH'S counsel with a letter stating that LONG BEACH and Washington Mutual have requested all credit bureaus to which LONG BEACH and Washington Mutual Bank, F.A. report to remove any reference to foreclosure from ASHWORTH AND

COMPROMISE AND SETTLEMENT AGREEMENT AND RELEASE - Page 5

240



WELCH'S credit reports. ASHWORTH AND WELCH agree that the letter from LONG BEACH'S counsel regarding the deletion of "foreclosure" reporting will not be used at any legal proceeding by ASHWORTH AND WELCH against LONG BEACH or any entity affiliated with LONG BEACH. ASHWORTH AND WELCH agree that the letter from LONG BEACH'S counsel shall only be effective with respect to any "foreclosure" reporting prior to the end of the 90-Day-Period; if the holder of the Deed of Trust elects to judicially foreclose at the end of the 90-Day-Period as set forth in paragraph 7 above, "foreclosure" reporting for that foreclosure may be made. ASHWORTH AND WELCH agree that neither LONG BEACH nor its affiliates are or will be responsible for any credit bureau's decision to remove, or not remove, said reference.

10. ASHWORTH AND WELCH agree to dismiss all their claims in their entirety with prejudice in the Lawsuit by 5:00 p.m. Central Standard Time on March 21, 2003. LONG BEACH agrees to dismiss its claims for fraud, fraudulent inducement, conversion, sanctions, and the Akin Gump Strauss Hauer & Feld LLP attorneys' fees incurred in the Lawsuit with prejudice against ASHWORTH AND WELCH with respect to the Home Equity Loan by 5:00 p.m. Central Standard Time on March 21, 2003, if this Agreement and the Deed in Lieu of Foreclosure have been executed by ASHWORTH AND WELCH and received by LONG BEACH'S counsel by that time and date. LONG BEACH will dismiss its claims for breach of contract with prejudice against ASHWORTH AND WELCH with respect to the Home Equity Loan on the date that (1) LONG BEACH is paid 100% OF THE FULL AMOUNT OWED ON THE HOME EQUITY LOAN; (2) the holder of the Deed of Trust completes its judicial foreclosure on the Property at its option; or (3) the Deed in Lieu of Foreclosure is released from escrow and the holder of the Deed of Trust takes title to and possession of the Property without a judicial procedure at its option, whichever occurs first.

COMPROMISE AND SETTLEMENT AGREEMENT AND RELEASE – Page 6

241

11.    Provided ASHWORTH AND WELCH and LONG BEACH execute this Agreement by 5:00 p.m. on March 21, 2003, and upon full execution of this Agreement, ASHWORTH AND WELCH fully release, waive, discharge, forever acquit, and covenant not to sue any and all past, present, and future entities and persons related to or affiliated with LONG BEACH including, but not limited to, LONG BEACH and all past, present, and future parent corporations, subsidiary corporations, successors, predecessors, affiliated corporations, officers, directors, employees, shareholders, agents, attorneys, representatives, insurers, assigns, partners, and partnerships, and all persons, natural or corporate, in privity with them, from any and all past, present, or future claims, controversies, and damages, known or unknown, suspected or unsuspected, arising out of or related in any way to the Home Equity Loan at issue, the origination and servicing of the Home Equity Loan, the Texas Home Equity Note dated as of March 26, 1999 (the "Note"), the Deed of Trust, any foreclosure proceedings, the Transactions, the Property, any credit reporting concerning the Home Equity Loan, any of the claims set forth or which could have been set forth in the Lawsuit, and any of the facts and matters upon which the claims and the Lawsuit were based. Provided ASHWORTH AND WELCH and LONG BEACH execute this Agreement by 5:00 p.m. on March 21, 2003, and upon full execution of this Agreement, LONG BEACH will fully release, waive, discharge, forever acquit, and covenant not to sue ASHWORTH AND WELCH, their agents, attorneys, representatives, and assigns, and all persons, natural or corporate, in privity with them, from any and all past, present, or future claims, controversies, and damages, known or unknown, suspected or unsuspected, arising out of or related in any way to the claims set forth in the Lawsuit for fraud, fraudulent inducement, conversion, sanctions, and the Akin Gump Strauss Hauer & Feld LLP attorneys' fees incurred in the Lawsuit with respect to the Home Equity Loan. The Parties to this Agreement hereby expressly acknowledge and consent that the releases, discharges, waivers, acquittals, and covenants

COMPROMISE AND SETTLEMENT AGREEMENT AND RELEASE — Page 7

242

not to sue, set forth above encompass, but are not limited to, all claims and demands for personal injury, actual damages, statutory damages, exemplary damages, punitive damages, expenses, damages sought pursuant to any federal, state or local laws, and for damages of whatever kind or character, present, past or future presented before any tribunal including federal, state, and bankruptcy courts and any administrative agency, which the Parties may now have, have had in the past, or hereafter may have arising out of the matters released by this Agreement. HOWEVER, the Parties expressly agree that nothing herein shall release ASHWORTH AND WELCH from the Home Equity Loan, ASHWORTH AND WELCH'S obligations under the Note and Deed of Trust pertaining to the Home Equity Loan, and LONG BEACH'S claims for breach of contract against ASHWORTH AND WELCH, until the date that (1) LONG BEACH is paid 100% OF THE FULL AMOUNT OWED ON THE HOME EQUITY LOAN; (2) the holder of the Deed of Trust completes its judicial foreclosure on the Property at its option; or (3) the Deed in Lieu of Foreclosure is released from escrow and the holder of the Deed of Trust takes title to and possession of the Property without a judicial procedure at its option. The Parties further agree that nothing herein shall release, at its option, the right of the holder of the Deed of Trust to judicially foreclose on the Property at the end of the 90-Day-Period as set forth in paragraph 7 above.

12. ASHWORTH AND WELCH affirm the validity of the Home Equity Loan, the Note, and the Deed of Trust.

13. ASHWORTH AND WELCH agree that they will bear all responsibility for any and all income tax consequences, if any, associated with or assessed as a result of this Agreement.

14. ASHWORTH AND WELCH agree that they will bear any and all costs of refinancing the Home Equity Loan.

COMPROMISE AND SETTLEMENT AGREEMENT AND RELEASE – Page 8

243



15.     The Parties expressly understand and agree that the releases and discharge provided herein shall not operate to release the Parties to this Agreement from any obligation they may incur pursuant to the duties set forth in this Agreement or from any breach of this Agreement.

16.     It is further understood and agreed that pursuant to paragraph 10 above, ASHWORTH AND WELCH will approve and join in presenting to the Court in which the Lawsuit is pending an Agreed Motion and Order of Dismissal with Prejudice, dismissing with prejudice all claims in their entirety brought by ASHWORTH AND WELCH against LONG BEACH in the Lawsuit and all claims brought by LONG BEACH against ASHWORTH AND WELCH for fraud, fraudulent inducement, conversion, sanctions, and the Akin Gump Strauss Hauer & Feld LLP attorneys' fees incurred in the Lawsuit with respect to the Home Equity Loan, and with costs of court and attorneys' fees taxed against the parties incurring same.

17.     ASHWORTH AND WELCH do hereby further represent and warrant that, except as set forth in paragraph 18 below, no other person or entity has or has had any interests in the claims, demands, obligations, or causes of action released herein and that ASHWORTH AND WELCH have the sole right and exclusive authority to execute this Agreement and resolve their claims, if any, against LONG BEACH; and that ASHWORTH AND WELCH have not sold, assigned, transferred, conveyed or otherwise disposed of any of the claims, demands, obligations, or causes of action released herein.

18.     ASHWORTH AND WELCH expressly represent and warrant that their attorneys, G. P. Hardy, III, Jerome O. Fjeld, and Hardy & Johns, may have or may have had interests in the claims, demands, obligations, and causes of action released herein; that ASHWORTH AND WELCH have the sole right and exclusive authority to execute this Agreement and resolve the claims, demands, obligations, and causes of action released herein; and that ASHWORTH AND WELCH have not otherwise sold, assigned, transferred, conveyed or disposed of any of the claims,

COMPROMISE AND SETTLEMENT AGREEMENT AND RELEASE — Page 9



demands, obligations, and causes of action released herein other than to their counsel. Further, for the consideration granted herein, ASHWORTH AND WELCH expressly agree to indemnify and hold harmless LONG BEACH and any and all of its insurance carriers, attorneys, agents, servants, employees, assigns, partners, partnerships, representatives, officers, directors, shareholders, successors, predecessors, subsidiary corporations, affiliate corporations, and parent corporations, administrators, executors, heirs, trustees, and all persons, natural or corporate, in privity with them, together with any such persons' or entities' successors, predecessors, officers, directors, employees, attorneys, agents, representatives, assigns, and shareholders, from any liability or claim of liability for ASHWORTH AND WELCH'S attorneys' fees arising out of the matters released herein, whether the same be now known or realized, and from any liability or claim of liability for breach of their representations and warranties set forth in this Agreement.

19.    ASHWORTH AND WELCH and LONG BEACH do hereby further represent and warrant that they each have consulted with their own attorneys regarding the risks of litigation and have entered into this Agreement of their own free will and accord and in accordance with their own judgment after reading the entirety of this Agreement, and after full consultation with their attorneys, and they do hereby affirm under oath that they have not been induced to enter into this Agreement by any statement, act or representation of any kind or character, except as expressly set forth herein, on the part of the Parties or on the part of the Parties' attorneys, agents, servants, employees, insurers, or representatives. By the execution of this Agreement, ASHWORTH AND WELCH and LONG BEACH acknowledge that, to the extent set forth herein, it is their intention to extinguish each and every claim of whatsoever nature and kind, whether or not now known, suspected, or realized and that they have not been coerced in any way to enter into this Agreement.

20.    ASHWORTH AND WELCH acknowledge and agree that this Agreement is a compromise settlement of disputed claims, and nothing herein shall constitute, nor shall it be

COMPROMISE AND SETTLEMENT AGREEMENT AND RELEASE – Page 10

245

RECEIVED  07/18/2013 11:50  14097656469         MARK W STEVENS
From:                                           07/18/2013 10:45       #267 P.037/048



deemed or construed to constitute, an admission of liability, fault, or responsibility on the part of LONG BEACH, all liability, fault, and responsibility being expressly denied.

21.   It is expressly understood and agreed by the Parties that the terms of this Agreement are contractual and not merely recitals and that the releases as set forth herein shall not operate to release the Parties from their duties or obligations set forth in this Agreement. Further, if any party to this Agreement is required to enforce this Agreement, which the Parties agree is enforceable, by legal action or otherwise, the party enforcing this Agreement shall be entitled to recover its attorneys' fees, costs, and expenses from the breaching party. The Parties further agree that this Agreement may be pleaded as a complete defense to, and used as the basis for an injunction against, any action, suit, or other proceeding based on claims released by this Agreement.

22.   This Agreement contains the entire agreement with respect to the settlement set forth herein between the Parties. This Agreement embodies, includes, merges and integrates all such prior and current agreements and understandings between ASHWORTH AND WELCH and LONG BEACH, and this Agreement may not be modified, changed, or amended except in writing and signed by ASHWORTH AND WELCH and LONG BEACH.

23.   In addition to the acts recited in this Agreement to be performed by the Parties, the Parties agree to perform, or cause to be performed, on or after the execution of this Agreement any and all such further acts as may be reasonably necessary to consummate the transactions contemplated herein.

24.   This Agreement may be executed simultaneously by facsimile signature and in one or more counterparts, each of which shall be deemed an original and all of which taken together shall constitute one and the same instrument.

COMPROMISE AND SETTLEMENT AGREEMENT AND RELEASE - Page 11

25. The Parties agree that they will bear their own costs, including attorneys' fees, which were incurred in connection with the Lawsuit and the matters released herein. However, LONG BEACH does not waive the attorneys' fees and costs incurred in connection with any past foreclosure proceedings (to the extent such fees and costs have previously been identified as part or all of the recoverable balance on that payoff statement dated December 2, 2002) or future foreclosure proceedings.

26. This Agreement shall be binding and inure to the benefit of the respective heirs, families, executors, administrators, representatives, successors, predecessors, assigns, attorneys-in-fact, attorneys-at-law, officers, directors, shareholders, employees, agents, parent corporations, subsidiary and affiliated corporations, affiliates, and insurers of the respective Parties hereto.

CLYDE ASHWORTH

PAULA WELCH

LONG BEACH MORTGAGE COMPANY
formerly d/b/a FINANCING USA

By:_____

Its:_____

LS077
JOHN3

COMPROMISE AND SETTLEMENT AGREEMENT AND RELEASE—Page 11

247

Mar-27-03 16:09   From-AKIN GUM   -DAL        214-969-43   T-477 P.12/16 F-688

25.   The Parties agree that they will bear their own costs, including attorneys' fees, which were incurred in connection with the Lawsuit and the matters released herein.  However, LONG BEACH does not waive the attorneys' fees and costs incurred in connection with any past foreclosure proceedings (to the extent such fees and costs have previously been identified as part or all of the recoverable balance on that payoff statement dated December 2, 2002) or future foreclosure proceedings.

26.   This Agreement shall be binding and inure to the benefit of the respective heirs, families, executors, administrators, representatives, successors, predecessors, assigns, attorneys-in-fact, attorneys-at-law, officers, directors, shareholders, employees, agents, parent corporations, subsidiary and affiliated corporations, affiliates, and insurers of the respective Parties hereto.

_____
CLYDE ASHWORTH


_____
PAULA WELCH


LONG BEACH MORTGAGE COMPANY
formerly d/b/a FINANCING USA

By: _____
Its: VICE PRESIDENT


65bb77
301043

COMPROMISE AND SETTLEMENT AGREEMENT AND RELEASE - Page 12

248

Case 03-46247 [ ment 20 Filed in TXSB on 03/22' )4 Page 51 of 66
MAR-21-2003 14:58 LARDY AND JOHNS P.15

STATE OF TEXAS §
§
COUNTY OF *Brazorg* §

BEFORE ME, that undersigned Notary Public, on this day personally appeared PAULA WELCH, known to me to be the person whose name is subscribed to the foregoing instrument. She acknowledged to me that she executed the foregoing instrument for the purposes and consideration expressed in the foregoing instrument.

GIVEN UNDER MY HAND AND SEAL OF OFFICE this the 21st day of
*March* 2003.



Notary Public in and for this
State of Texas

My Commission Expires:

4/10/04

Jennifer R. Belz
(Printed Name of Notary)

COMPROMISE AND SETTLEMENT AGREEMENT AND RELEASE - Page 14

249

STATE OF TEXAS §
COUNTY OF Brazoria §
§

BEFORE ME, the undersigned Notary Public, on this day personally appeared CLYDE ASHWORTH, known to me to be the person whose name is subscribed to the foregoing instrument. He acknowledged to me that he executed the foregoing instrument for the purposes and consideration expressed in the foregoing instrument.

GIVEN UNDER MY HAND AND SEAL OF OFFICE this the 21st day of March, 2003.

Notary Public in and for this
State of Texas

My Commission Expires:
4/10/04

Jennifer R. Belz
(Printed Name of Notary)

COMPROMISE AND SETTLEMENT AGREEMENT AND RELEASE - Page 13

250

Case 03-46247 [ ument 20 Filed in TXSB on 03/22 04 Page 52 of 66

Mar-21-03 16:10 From-AKIN GUMP -DM 214-969-43 T-479 P.16/16 F-628

STATE OF CALIFORNIA §
§
COUNTY OF San Joaquin §

BEFORE ME, that undersigned Notary Public, on this day personally appeared Karen Marian , known to me to be the person whose name is subscribed to the foregoing instrument. He/she acknowledged to me that he/she executed and is duly authorized to execute the foregoing instrument in the name of and on behalf of LONG BEACH MORTGAGE COMPANY, formerly d/b/a FINANCING USA, for the purposes and consideration expressed in the foregoing instrument.

GIVEN UNDER MY HAND AND SEAL OF OFFICE this the 21st day of March , 2003.

Notary Public in and for this
State of California

My Commission Expires:

December 3, 2005

Irene A. Hard
(Printed Name of Notary)

IRENE A. HARD
Commission # 1333205
Notary Public - California
San Joaquin County
My Comm. Expires Dec 3, 2005

COMPROMISE AND SETTLEMENT AGREEMENT AND RELEASE – Page 15

251



## DEED IN LIEU OF FORECLOSURE

**Date:**      March 21, 2003

**Grantor:**      PAULA A. WELCH AKA PAULA ANN WELCH
AND HUSBAND, CLYDE ALLEN ASHWORTH

**Grantor's Mailing Address:**
1625 Avenue L
Santa Fe, Texas 77510

**Grantee:**      WELLS FARGO BANK MINNESOTA, NA, formerly known as NORWEST
BANK MINNESOTA, NA, as Trustee for Salomon Brothers Mortgage Securities
VII, Inc., Floating Rate Mortgage Pass Through Certificates, series 1999-LB1

**Grantee's Mailing Address:**
Sixth Street & Marquette Avenue
Minneapolis, Minnesota 55479

**Note:** Texas Home Equity Note dated March 26, 1999 in the principal amount of Two Hundred
Seventy Thousand Four Hundred Dollars ($270,400.00) bearing interest as stated therein,
executed by PAULA A. WELCH AKA PAULA ANN WELCH AND HUSBAND, CLYDE
ALLEN ASHWORTH, and payable to the order of LONG BEACH MORTGAGE COMPANY
DBA FINANCING USA, a Delaware Corporation.

**Security Instrument:** Texas Home Equity Security Instrument, dated March 26, 1999, executed
by PAULA A. WELCH AKA PAULA ANN WELCH AND HUSBAND, CLYDE ALLEN
ASHWORTH to FRANK J. CURRY Trustee, securing the payment of the above referenced
Note. Said Security Instrument filed for record in the office of the County Clerk of Galveston
County, Texas on April 1, 1999 under Clerk's File No. 9915359.

Said Security Instrument having been assigned to NORWEST BANK MINNESOTA,
NATIONAL ASSOCIATION, AS TRUSTEE, by instrument dated April 2, 1999.

**Consideration:** TEN AND NO/100 DOLLARS ($10.00) and further the release of Grantor
from all liability for the indebtedness and obligations under the Note and Security Instrument,
except that no release is given of any liens or warranties of title and further except that the
indebtedness under the Note is not canceled or extinguished.

**Property Legal Description:** Lot One Hundred (100) of THAMAN'S FIRST SUBDIVISION
in the East ½ of the Mary Austin League, located in Galveston County, Texas, according to the
map or plat thereof recorded in Volume 231, Page 6, in the office of the County Clerk of
Galveston County, Texas.

EXHIBIT "B"

182

**Exceptions to Conveyance and Warranty:** The liens described in this deed and the exceptions to conveyance and warranty in the Security Instrument.

Grantor, for the Consideration and subject to the Exceptions to Conveyance and Warranty, grants, sells, and conveys to Grantee the Property, together with all and singular the rights and appurtenances thereto in any way belonging, to have and to hold it to Grantee and Grantee's heirs, successors, and assigns forever. Grantor binds Grantor and Grantor's heirs and successors to warrant and forever defend all and singular the Property to Grantee and Grantee's heirs, successors, and assigns against every person whomsoever lawfully claiming or to claim the same or any part hereof, except as to the Exceptions to Conveyance and Warranty.

Conveyance in Lieu of Foreclosure. This deed and the conveyances being made are executed, delivered, and accepted in lieu of foreclosure and will be interpreted and construed the same as a foreclosure of the liens and as an absolute conveyance to Grantee of all right, title, and interest in and to the Property, including specifically but without limitation any equity or rights of redemption of Grantor in or to the Property.

Continuing Nature of Lien. Notwithstanding the release of Grantor from all liability for the indebtedness and obligations under the Note and Security Instrument, the indebtedness has not been canceled or extinguished and the Property continues to be subject to the performance of the obligations under the Security Instrument. The Security Instrument lien is not released or relinquished in any manner, and the indebtedness, obligations, and lien will remain valid and continuous and in full force and effect, unless and until the indebtedness, obligations, and liens are expressly released by written instrument executed and delivered by the holder thereof, at the holder's sole discretion.

Nonmerger. Neither Grantor nor Grantee intend that there be, and there will never be, a merger of the Security Instrument lien with the fee simple title or any other interest of Grantee in the Property by virtue of this conveyance, and the parties expressly provide that any interest in the Security Instrument lien and fee simple title will be and remain at all times separate and distinct.

2

183

GRANTOR:

PAULA A. WELCH AKA PAULA ANN
WELCH

CLYDE ALLEN ASHWORTH

GRANTEE:

WELLS FARGO BANK MINNESOTA, NA
FORMERLY KNOWN AS NORWEST BANK
MINNESOTA, NA, AS TRUSTEE FOR
SALOMON BROTHERS MORTGAGE
SECURITIES VII, INC:, FLOATING RATE
MORTGAGE PASS THROUGH
CERTIFICATES, SERIES 1999-LB1

By: _____
Name: George Cooksey
Title: First Vice President of
Long Beach Mortgage Company,
the attorney in fact

3

184

STATE OF TEXAS )
)ss:
COUNTY OF *Brazoria* )

The foregoing instrument was acknowledged before me on the 21st day of *March* 2003, by PAULA A. WELCH.

[SEAL]
Jennifer R Belz
My Commission Expires
April 10, 2004

NOTARY PUBLIC in and for the State of Texas

My Commission expires: 4/10/04

Jennifer R. Belz
Printed Name of Notary

STATE OF TEXAS )
)ss:
COUNTY OF *Brazoria* )

The foregoing instrument was acknowledged before me on the 21st day of *March*, 2003, by CLYDE ALLEN ASHWORTH.

[SEAL]
Jennifer R Belz
My Commission Expires
April 10, 2004

NOTARY PUBLIC in and for the State of Texas

My Commission expires: 4/10/04

Jennifer R. Belz
Printed Name of Notary

4

185

STATE OF California           )
                              )ss:
COUNTY OF Los Angeles         )

The foregoing instrument was acknowledged before me this 14th day of November, 2003, by George Cooksey, First Vice President of Long Beach Mortgage Company, the attorney in fact of Wells Fargo Bank Minnesota, NA, on behalf of Wells Fargo Bank Minnesota, NA, formerly known as Norwest Bank Minnesota, NA, as Trustee for Salomon Brothers Mortgage Securities VII, Inc., Floating Rate Mortgage Pass Through Certificates, series 1999-LB1.

[SEAL]

SALLY BELTRAN
Commission # 1421329
Notary Public - California
Los Angeles County
My Comm. Expires May 31, 2007

NOTARY PUBLIC in and for the State of California

My Commission expires: 5-31-2007

SALLY BELTRAN
Printed Name of Notary

**FILED AND RECORDED**

OFFICIAL PUBLIC RECORDS

2013015526

March 14, 2013  10:10:31 AM
FEE: $32.00
Dwight D. Sullivan, County Clerk
Galveston County, TEXAS

5

186

NO.13-CV-0422

| | | |
|---|---|---|
| MID PAC PORTFOLIO, LLC | § | IN THE DISTRICT COURT |
| | § | |
| VS. | § | |
| | § | |
| PAULA WELCH, CYDE ALAN ASHWORTH, | § | |
| AND WELLS FARBO BANK, MINNESOTA,NA | § | |
| FORMERLY KNOWN AS NORTHWEST | § | 405th JUDICIAL DISTRICT |
| BANK, MINNESOTA, NA, AS TRUSTEE FOR | § | |
| SALOMON BROTHERS MORTAGE | § | |
| SECURITIES VII,INC. FLOATING RATE | § | |
| MORTGAGE PASS THROUGH | § | |
| CERTIFICATES SERIES 1999-LBI | § | GALVESTON COUNTY, TEXAS |

## STIPULATION AND DISCLAIMER OF DEFENDANT CITIGROUP GLOBAL MARKETS REALTY CORP.

COMES NOW, Defendant Citigroup Global Markets Realty Corp states that:

1. It was served with the Amended Petition for a Declaratory Judgment filed in this case by Mid Pac Portfolio. LLC on July 24, 2013.

2. Citigroup Global Markets Realty Corp. and Mid Pac Portfolio, LLC executed a Master Asset Sale Agreement dated June 1, 2012 under which Citigroup Global Markets Realty Corp sold and transferred its interest in the Paula Welch/ Clyde Ashworth Deed in Lieu to Mid Pac Portfolio, LLC as an REO (Real Estate Owned") asset.

3. A copy of the Deed in Lieu is attached as Exhibit "E" to the Amended Petition filed by Mid Pac Portfolio.

4. As a result of the sale, Citigroup Global Markets Realty Corp no longer claims any interest in the Deed in Lieu or the property covered by it.

5. Consequently, Citigroup Global Markets Realty Corp disclaims any right, title or interest in the real property at issue in this case.

6. Citigroup Global Markets Realty Corp consents to the entry of a judgment against it in favor of Mid Pac Portfolio, LLC providing that Citigroup Global Markets Realty Corp sold and transferred its interest in the Deed in Lieu to Mid Pac Portfolio, LLC provided that the judgment

115

as to Citigroup Global Markets Realty Corp is IN REM only.

7. Plaintiff Mid Pac Portfolio, LLC agrees not to pursue, and waives the award of, any monetary damages, attorney fees, court costs or discovery against Citigroup Global Markets Realty Corp. but not against any other Defendant in this case.

Citigroup Global Markets Realty Corp

By _____

Its: _____Vice President_____

STATE OF NEW YORK            §

COUNTY OF __New York__       §

This instrument was acknowledged before me on the __25__ day of __September__, 2013, by ___James Goddard___ who is the ___Vice President___ (capacity) of Citigroup Global Markets Realty Corp, on behalf of said company.

SEAL

_____
Notary Public, State of New York

My commission expires:
__June 18, 2015__

**RODD CORNER**
Notary Public - State of New York
No. 01CO6169041
Qualified in New York County
My Commission Expires June 18, 2015

Mid-Pac Portfolio, LLC

By: _____
Michael Burns
Texas Bar No. 03447980
8111 LBJ Freeway, Suite 1501
Dallas, Texas 75251
(214) 276-1545 – Telephone
(214) 276-1546 – Fax

116